UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA </br> </br> v. </br> </br> GERARDO SALAZAR-RODRIGUEZ | ) </br> ) </br> ) No. 07 CR 224-19 </br> ) </br> ) Judge Rebecca R. Pallmeyer </br> ) </br> ) |

### MEMORANDUM OPINION AND ORDER

Defendant Gerardo Salazar-Rodriguez is serving a life sentence and three concurrent 20-year sentences for murder, a murder conspiracy, and other offenses. Mr. Salazar-Rodriguez has moved for compassionate release from his sentence under 18 U.S.C. § 3582(c)(1)(A) because he suffers from stage IV colorectal cancer. Salazar-Rodriguez's criminal behavior was shocking and egregious. But because he now appears to be very near death, and can be confined to his home while living with a relative, the court grants his request and sets conditions for his release [1058, 1062].

### BACKGROUND

Salazar-Rodriguez is incarcerated for several crimes related to his participation in a Chicago-based criminal enterprise that created and sold fraudulent government documents, such as green cards, Social Security cards, driver's licenses, and state identification cards. (*See* Superseding Indictment [146].) In a superseding indictment filed October 23, 2007, the Government charged Salazar-Rodriguez with document-fraud conspiracy, 18 U.S.C. § 371 (Count 1); racketeering conspiracy, *id.* § 1962 (Count 2); murder in aid of racketeering, *id.* § 1959 (Counts 3 and 4); murder for hire, *id.* § 1958 (Count 5); and conspiracy to commit murder abroad, *id.* § 956 (Counts 6 and 7). He was tried jointly with two codefendants, Julio Leija-Sanchez and Manuel Leija-Sanchez, in 2013. At the end of the six-week trial, the jury found Salazar-Rodriguez guilty on all counts [858].[1] In 2014, this court sentenced Salazar-Rodriguez to concurrent terms

---

[1] The Government voluntarily dismissed Counts 4 and 5 shortly before trial [799]. Gerardo was thus convicted on Counts 1, 2, 3, 6, and 7. On the jury verdict form [858], Counts 6 and 7 were identified as counts "4" and "5."

of life imprisonment on Counts 2 and 3; 20 years imprisonment on Counts 6 and 7; and 60 months on Count 1 [932, 942]. The Seventh Circuit reduced the Count 2 sentence to 20 years but otherwise affirmed the convictions and sentence. *United States v. Leija-Sanchez*, 820 F.3d 899, 904 (7th Cir. 2016).

In 2018, Salazar-Rodriguez filed a habeas petition under 28 U.S.C. § 2255, arguing that he received ineffective assistance of counsel at trial and on direct appeal. *See United States v. Salazar-Rodriguez*, No. 18 C 269 (N.D. Ill.). This court denied Salazar-Rodriguez's petition and similar petitions by his codefendants. *United States v. Leija-Sanchez*, No. 17 C 7466, 2022 WL 1422822 (N.D. Ill. May 4, 2022).

In March 2022, Salazar-Rodriguez filed this *pro se* motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A), citing his recent diagnosis of colorectal cancer [1058]. Salazar-Rodriguez submitted a handful of medical records and a letter from the warden at his facility, FMC Butner, in which the warden recommended that the Central Office of the Bureau of Prisons consider Salazar-Rodriguez's request for compassionate release [1059]. This court gave the Government 21 days to file a responsive brief, to furnish copies of Salazar-Rodriguez's full medical and disciplinary records from the BOP, and to advise the court on whether the BOP had acted on the warden's recommendation [1060]. The Government never responded.

In June 2022, Salazar-Rodriguez filed a supplemental brief (styled as an "emergency motion"), explaining that his medical condition had worsened [1062]. The Government then submitted (1) a brief opposing Salazar-Rodriguez's request [1066], (2) copies of Salazar-Rodriguez's medical and disciplinary records from the BOP [1065, 1068], and (3) a supplemental brief explaining that the BOP Central Office had not yet acted on Salazar-Rodriguez's request because of procedural issues related to his immigration status [1069]. The motion is now ready for decision.

**DISCUSSION**

Generally, a federal court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). Early release may be permitted, however, if "extraordinary and compelling reasons warrant" a reduction. *Id.* § 3582(c)(1)(A)(i). Such a motion for "compassionate release" may be filed by the BOP Director or by a prisoner. *Id.* To resolve such a motion, the court asks whether (1) an "extraordinary and compelling" reason warrants the reduction, and (2) the reduction is appropriate in light of the factors in 18 U.S.C. § 3553(a).[2] *See* 18 U.S.C. § 3582(c)(1)(A); *United States v. Kurzynowski*, 17 F.4th 756, 759 (7th Cir. 2021) (explaining this two-step analysis).

Section 3582 also says that the court must determine that the sentence reduction would be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The Sentencing Commission has not, however, updated its policy statements since the First Step Act amended the statute to allow prisoners to file motions for compassionate release on their own. *United States v. Black*, 999 F.3d 1071, 1074 (7th Cir. 2021). The Commission's policy statements are thus not binding when a court considers a motion filed by a prisoner (rather than the BOP). *United States v. Rucker*, 27 F.4th 560, 562 (7th Cir. 2022). The Seventh Circuit has nevertheless recognized that the Commission's policy statement in U.S.S.G. § 1B1.13 provides a helpful "working definition of 'extraordinary and compelling reasons.'" *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)); *see also Kurzynowski*, 17 F.4th at 759 (noting "that § 1B1.13 may serve as a guide for district court judges in exercising their discretion"). Mindful of that guidance, the court discusses § 1B1.13 in detail below.

---

[2] Prisoners seeking compassionate release must first pursue administrative remedies; the Government concedes that Salazar-Rodriguez has done so. (Gov't's Resp. [1066] at 7 (citing 18 U.S.C. § 3582(c)(1)(A)) (noting that Salazar-Rodriguez filed his motion more than 30 days after the warden at FMC Butner received his request); *see also* Fed. Bureau of Prisons, Form BP-A0148, Inmate Request to Staff (Aug. 23, 2021), Ex. 1 to Def.'s Mot. [1059] (Salazar-Rodriguez's administrative request for a sentence reduction).)

I.    **Extraordinary and Compelling Circumstances**

Salazar-Rodriguez argues that his stage IV colorectal cancer is an extraordinary and compelling circumstance under 18 U.S.C. § 3582(c)(1)(A). (Def.'s Mot. [1058] at 3–4; Def.'s Emergency Mot. [1062] at 1–2.) For support, he cites the Sentencing Commission's policy statement, which specifically identifies "terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory)" as a possibly compelling circumstance. U.S.S.G. § 1B1.13 application note 1(A)(i). In fact, the Commission's very first example within the category of terminal illness is "metastatic solid-tumor cancer." *Id.*

The Government concedes that Salazar-Rodriguez is "seriously ill" but questions whether his illness meets the "extraordinary and compelling" standard. (Gov't's Resp. [1066] at 8.) After all, the Government argues, the word "terminal" never appears in Salazar-Rodriguez's medical records, and Salazar-Rodriguez has not furnished any medical opinion on his life expectancy. (*Id.*) Having thoroughly reviewed Salazar-Rodriguez's medical records, the court concludes his circumstances are indeed dire. Salazar-Rodriguez was diagnosed with colorectal cancer around May 2021 after he reported increasingly severe abdominal pain. Tests revealed an "aggressive colon cancer of the left colon," described in medical terms as moderate to poorly differentiated adenocarcinoma.[3] (Medical Records [1065-1] at 9, 1198, 1211.) At the time, Salazar-Rodriguez's cancer was classified as stage IIIC.[4] (*Id.* at 597.) He promptly underwent a "partial colon

---

[3]    In the colorectal context, "[a]denocarcinoma is a type of cancer that starts in the cells that form glands making mucus to lubricate the inside of the colon and rectum." *Understanding Your Pathology Report: Invasive Adenocarcinoma of the Colon*, AM. CANCER SOC'Y (Feb. 27, 2017), https://www.cancer.org/treatment/understanding-your-diagnosis/tests/ understanding-your-pathology-report/colon-pathology/invasive-adenocarcinoma-of-the-colon. html. "Differentiation is the grade of the cancer, which is based on how abnormal the cells look under the microscope. Cancers that are higher grade or poorly differentiated tend to grow and spread more quickly." *Id.*

[4]    At stage III of colorectal cancer, cancer cells "have spread to one or more nearby lymph nodes, but they have not grown beyond the lymph nodes and colon or rectum wall to other parts of the body." *Colorectal Cancer Stages*, CANCER TREATMENT CTRS. OF AM. (last visited Oct. 7, 2022), https://www.cancercenter.com/cancer-types/colorectal-cancer/stages. At substage IIIC, the cancer typically has "grown past the colon or rectum wall," may have spread to nearby organs, and is found in at least some nearby lymph nodes. *Id.*

resection, splenectomy, partial pancreatectomy, and abdominal wall resection"—a surgical procedure that removed portions of his colon, spleen, pancreas, and abdominal wall. (*Id.* at 1198.) He received chemotherapy treatment from July to December of 2021. (*Id.* at 1136, 1146.) Initially, these interventions were effective: A PET scan completed in December 2021, near the end of the chemotherapy, showed "no definitive evidence of residual disease," and Salazar-Rodriguez was briefly considered to be "in remission." (*Id.* at 185, 201; *see also* Def.'s Emergency Mot. At 1 (noting that "it appeared that his illness was responding well to the treatment").) Doctors nevertheless emphasized the "very high risk for recurrence." (*Id.* at 232.)

That possibility came to pass just weeks later. In January 2022, a CT scan revealed a mass that was consistent with "recurrent disease invading [Salazar-Rodriguez's] small bowel and abdominal wall." (*Id.* at 117, 157, 1136.) By April, repeat biopsies had proven that the cancer was metastatic, meaning that it had advanced to stage IV.[5] (*Id.* at 9, 59, 97, 103, 1136.) In May, a PET/CT scan showed "[i]nnumerable" metastases "throughout the abdomen." (*Id.* at 53, 1134; *id.* at 59 (noting "progressive disease and new liver lesions").) And later that month, a panel of doctors concluded that surgery is not possible.[6] (*Id.* at 59.)

Salazar-Rodriguez completed a course of palliative chemotherapy between early May and early June of this year.[7] (Medical Records at 51, 53, 1096.) This treatment significantly improved

---

[5] "Metastasis means that the cancer cells have spread beyond the colon to other organs. This is also referred to as advanced colon cancer or stage IV colon cancer." *Treatment for Metastatic Colon Cancer*, MEMORIAL SLOAN KETTERING CANCER CTR. (last visited Oct. 7, 2022), https://www.mskcc.org/cancer-care/types/colon/treatment/metastases.

[6] A treatment note from May 12, 2022, reads as follows: "[Salazar-Rodriguez's] repeat biopsy showed metastatic adenocarcinoma. His repeat imaging on [May 8] showed progressive disease and new liver lesions. Based on these findings, [doctors] do not feel surgical resection is possible. Ongoing systemic treatment is recommended." (Medical Records at 59; *see also id.* at 1096 (noting that Salazar-Rodriguez is "not a surgical candidate").)

[7] "From a surgical standpoint in colorectal cancer, therapy may be considered palliative when the resection of all known oncologic disease is no longer possible. . . . Since the cure of disease is not possible, the goal of treatment and essentially the success of therapy becomes judged by control of symptoms and alleviating suffering . . . ." M.R. Dixon & M.J. Stamos,

5

his pain symptoms, as intended, but his prognosis remains "poor" or "very poor." (Medical Records at 51, 53, 1096.)

The Government nevertheless argues that Salazar-Rodriguez has failed to establish that his illness creates an extraordinary and compelling circumstance, in part because the BOP medical records do not use the term "terminal" and contain no opinion on Salazar-Rodriguez's life expectancy. (Gov't's Resp. at 8.) More specific language might have been helpful, but the court concludes that the existing record is sufficient to establish that Salazar-Rodriguez has an "extraordinary and compelling" basis for release. *See, e.g.*, U.S.S.G. § 1B1.13 application note 1(A)(i) (noting that "[a] specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required" for this finding).)[8] The medical records confirm that Salazar-Rodriguez is suffering from stage IV colorectal cancer, that his condition cannot be treated surgically, and that his prognosis is "poor," at best. As the court mentioned above, the warden who oversees Salazar-Rodriguez's facility, FMC Butner, recommended that the BOP's Central Office consider Salazar-Rodriguez's request for compassionate release. That recommendation, which was based on the severity of Salazar-Rodriguez's medical condition, was made in September 2021, well before Salazar-Rodriguez's cancer worsened in 2022. Finally, even a cursory outside investigation confirms the severity of his illness. *See* Miguel A. Rodriguez-Bigas et al*., Stage IV Colorectal Cancer*, *in* HOLLAND-FREI CANCER MEDICINE (DONALD W. KUFE ET AL. EDS., 6th ed. 2003), https://www.ncbi.nlm.nih.gov/books/NBK13267 (noting that the "[o]verall 5-year survival for patients with stage IV colorectal cancer is less than 10%" and that the "median survival is reported to be approximately 9 months with best supportive care").

---

*Strategies for Palliative Care in Advanced Colorectal Cancer*, 21 DIGESTIVE SURGERY 344, 344–45 (2004).

[8] Even if the Government were correct that a defendant seeking compassionate release must proffer an expert opinion on life expectancy, that requirement would arguably be satisfied here. In a special report prepared for the court, a probation officer reported that one of Salazar-Rodriguez's physicians at FMC Butner—Staff Oncologist Dr. Andres Carden—opined in June 2022 that "there is a 'high chance' that the defendant could perish within 12 months." (*See* Special Report [1071] at 1 (sealed).)

The court thus concludes that Salazar-Rodriguez's stage IV colorectal cancer provides an extraordinary and compelling basis for his release.

## II. Consistency with 18 U.S.C. § 3553(a) Factors

Next, the court must consider whether releasing Salazar-Rodriguez would be appropriate in light of the factors in 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A); *Kurzynowski*, 17 F.4th at 759. These factors include "the nature and circumstances of the offense"; the "history and characteristics of the defendant"; and the need for the sentence to "reflect the seriousness of the offense," "provide just punishment for the offense," "afford adequate deterrence to criminal conduct," and "protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(1)–(2). District courts exercise "considerable discretion" in weighing these factors. *United States v. Saunders*, 986 F.3d 1076, 1077 (7th Cir. 2021).

Salazar-Rodriguez's crimes were extremely serious, and the evidence supporting his conviction was compelling and disturbing. He did not merely participate in the street-level operations of the defendants' criminal enterprise, hawking fraudulent government documents and paying off street gangs to maintain control over their territory. Instead, his conduct escalated as he continued to work with the organization, and he eventually became a designated hitman, committing a gruesome killing and planning at least one more. The savagery of those actions should not be understated.

A life sentence was appropriate in this case, and Salazar-Rodriguez has been in government custody since his arrest in 2007.[9] He is now facing near-certain death, however, and is so ill that, if released, it would be nearly impossible for him to engage in further criminal activity. Family members in Mexico, and a cousin here in the United States, have offered to provide a home where Salazar-Rodriguez could be confined under home incarceration. Under the

---

[9] According to his presentence report, Salazar-Rodriguez was arrested and detained in Mexico on August 22, 2007, and eventually transferred to U.S. federal custody on June 29, 2011. (*See* Presentence Investigation Report [878] at 2, 22 (sealed).)

circumstances presented here, the court does not believe that granting the request for compassionate release would undermine the principles of law and order, nor minimize the seriousness of his offense. Instead, such a ruling is, of course, a reflection of compassion; it also rests on the recognition that there are circumstances where incarceration loses some of its value and costs more to a society, in money or dignity, than it is worth. The court finds no need to assure that a gravely ill defendant, who speaks little English and will continue to require costly medical treatments, dies in an American prison. Under the circumstances, it is punishment enough that the defendant will have been incarcerated for the final healthy years of his life.

### III. Conditions and Circumstances of Release

The final matter is where Salazar-Rodriguez would live, and how he would be cared for, upon release from BOP custody. As the Government notes, Salazar-Rodriguez is a citizen of Mexico and lacks legal status in the United States. (Gov't's Supp. Resp. [1069] at 2–3.) Salazar-Rodriguez was previously subject to an immigration detainer issued by Immigration and Customs Enforcement (ICE), but ICE reportedly cancelled that detainer in 2021 due to Salazar-Rodriguez's medical condition. (*See id.* at 3.)[10] Given the cancellation, it is not clear what immigration-related actions could or will be taken against Salazar-Rodriguez if he is released. Salazar-Rodriguez has stated his hope "to be reunited with his family" near Mexico City. (Def.'s Emergency Mot. at 2; *see also* Memorandum from T. Scarantino, Complex Warden, FCC Butner, to Ken Hyle, Assistant Director, Office of General Counsel, BOP (Sept. 10, 2021), Ex. 4 to Def.'s Mot. [1059] (similar).) In his emergency motion, Salazar-Rodriguez provided a residential street address in Mexico as well as the names and phone numbers of two sisters, a brother, a son, and a daughter, all of whom evidently live at that location. (Def.'s Emergency Mot. at 3.) Salazar-Rodriguez also named several doctors who would treat him in Mexico City. (*Id.* at 2–3.)

---

[10] In December 2022, a probation officer informed the court that, based on a conversation with an official at ICE, Salazar-Rodriguez's immigration detainer had been "cancelled" due to Defendant's terminal illness. (*See* Special Report [1072] at 1 (sealed).)

As the Government suggests, it is possible that Salazar-Rodriguez described these plans to live in Mexico at least in part because he believed he was subject to an immigration detainer, which would have made his deportation virtually inevitable upon release from BOP custody. (Gov't's Supp. Resp. at 2–3, 3 n.2.) As the detainer has (so far as the court is aware) been lifted, it is not clear whether Salazar-Rodriguez's still intends to live in Mexico. In any event, should he remain in the United States after his release from BOP custody, Salazar-Rodriguez proposes that he reside with a cousin in Chicago. In June 2022, a probation officer interviewed that cousin, Vanessa Carrasco, and confirmed that Ms. Carrasco would be able and willing to host Salazar-Rodriguez, including by helping to meet some of his medical needs. (*See* Special Report [1071] at 2 (sealed).)

## **CONCLUSION**

Salazar-Rodriguez's motion for compassionate release [1058] and emergency motion for compassionate release [1062] are granted. The court directs that Salazar-Rodriguez's sentence be reduced to one of time considered served as of December 31, 2022. The probation office is directed to evaluate the propriety of Salazar-Rodriguez's proposed living arrangements and to propose appropriate conditions of supervised release, including home confinement, as soon as practicable.

ENTER:

Dated: December 7, 2022

_____
REBECCA R. PALLMEYER
United States District Judge